:::
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
:::

```
_____
                               :
UNITED STATES OF AMERICA       :
                               :   Crim. No. 17-408 (NLH)
     v.                        :
                               :
MIRZA HUSKIC,                  :
                               :   OPINION
                               :
          Defendant.           :
_____:
```

**APPEARANCES**:

MIRZA HUSKIC
#71163-050
ALLENWOOD LOW
FEDERAL CORRECTIONAL INSTITUTION
INMATE MAIL/PARCELS
P.O. BOX 1000
WHITE DEER, PA 17887-1000

　　*Pro Se*

FRANCESCA ANNE LIQUORI
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
970 BROAD STREET
NEWARK, NJ 07102

GABRIEL JOHN VIDONI
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
CAMDEN FEDERAL BUILDING U.S. COURTHOUSE
P.O. BOX 2098
401 MARKET STREET, 4TH FLOOR
CAMDEN, NJ 08101

　　*Counsel for the United States*

**Hillman**, **District Judge**

　　Before the Court is Mirza Huskic's ("Defendant") Motion for

Reduction of Sentence under the First Step Act, 18 U.S.C. §

3582(c)(1)(A).  (ECF 68).  For the reasons expressed below, Defendant's Motion will be denied.

**Background**

On October 18, 2019, Defendant pleaded guilty to conspiracy to distribute and to possess with intent to distribute N-Benzylpiperazine, a Schedule I controlled substance, contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(I)(C), and in violation of 21 U.S.C. § 846.  (See ECF 66).  Thereafter, on June 19, 2019, this Court sentenced Defendant to a term of imprisonment of 42 months and a 3-year term of supervised release.  (See id.)  Defendant's release date is projected to be July 13, 2022.[1]  Defendant filed the instant pro se motion on February 4, 2022.  (ECF 68).  The Government filed a letter in opposition on April 20, 2022.  (ECF 70).  The Court considers Defendant's motion against this factual backdrop.

**Legal Standard**

Under the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" United States v. Sellers, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons (the

---

[1] FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited April 22, 2022).

2

"BOP") to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals." United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At the second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

**Discussion**

1. **Defendant has satisfied the exhaustion requirements**

Defendant has fully exhausted his administrative rights in this case after applying to the warden of FCI Allenwood on December 22, 2021 and receiving a denial from the warden on January 4, 2022. (ECF 70 at 2). The Government agrees that

3

Defendant has exhausted his administrative remedies (id.), as required by the statute.

2. **Defendant fails to establish "extraordinary and compelling" reasons for his release**

Defendant argues that the advent of COVID-19 has made his experience in prison more punitive than it otherwise would have been. (ECF 68 at 2). He also argues that if he were not subject to deportation at the end of his incarceration, he would have already been eligible from release from prison. (Id.) Defendant highlights that the two facilities during the majority of his incarceration have been on modified lockdown procedures for most of his time there. (Id. at 3). Defendant also notes that because of his deportation status, he is not eligible for BOP programs that would have given him credits entitling him to early release. (Id.) Defendant notably does not mention any medical conditions that could be exacerbated by COVID-19. (See generally, id.)

The Government opposes Defendant's motion and contends that Defendant has not met his burden to show "extraordinary and compelling reasons" justifying his release. They argue that the BOP has implemented a detailed action plan to address the advent of COVID-19 and that FCI Allenwood, in particular, has metrics showing that it is effectively mitigating the risks of the pandemic. (ECF 70 at 3-4). In terms of vaccinations, they

4

point to data that shows that the BOP is diligently and swiftly vaccinating its inmate population.  (Id. at 4).  They also note that Defendant is vaccinated.  (Id. at 2).  Further, the Government relies heavily on the fact that Defendant has not identified any medical conditions that fit within the meaning of § 3582(c)(1)(A).[2]  (Id. at 11).

Defendant does not present "extraordinary and compelling" reasons for his release.  The Court takes seriously Defendant's concerns about the effect of COVID-19 on his experience in the custody of the BOP and conducts its analysis on whether he has shown "extraordinary and compelling reasons for his release" accordingly.  That said, the Court holds that Defendant has not met that standard.  First, the Court finds instructive, although not determinative,[3] the current guidance by the Sentencing

---

[2] The Government notes that its independent review of Defendant's medical records reveal certain medical ailments but argues that they are not "extraordinary and compelling."  (Id. at 11-13).  Regardless, it is Defendant's burden to identify medical conditions that meet that standard and Defendant has not identified any in his submission.  Sellers, 2020 WL 1972862 at *1 ("[U]nder the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release. 18 U.S.C. § 3582(C)(1)(A).").
[3] While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act.  That said, the Third Circuit has blessed a district court's consideration of § 1B1.13 when it comes to evaluating motions for compassionate release filed by prisoners.  United

5

Commission as incorporated by § 3582(c).  Defendant has not pointed to any medical conditions that militate toward release under § 3582(c)(1)(A).

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines. U.S.S.G. § 1B1.13, cmt. n.1(A).  Even assuming the Court could independently look at the health conditions in Defendant's medical records and allowing for a liberal review, it cannot say that they fall into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances."  Id. It also cannot say that Defendant suffers from conditions that substantially "diminish[] the ability of [Defendant] to provide self-care within the environment of a correctional facility and

---

States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert. denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons.")  Even if the Court were to assume that a revised § 1B1.13 would expand the breadth of medical situations warranting release, the result here would not be different.  As set forth in more detail in this Opinion, the Defendant fails to demonstrate that his personal circumstances and jail conditions in light of the pandemic alone, or in tandem, represent extraordinary and compelling reasons warranting a sentence reduction and that the applicable sentencing factors under § 3553(a) similarly support such a reduction.

6

from which he...is not expected to recover." Id.  Defendant has not shown that he cannot care for himself.  In the absence of specific evidence showing a more heightened risk, the Court declines to find that Defendant has made a showing of medical conditions, even with the possibility of contracting COVID-19, which warrant his release.

Additionally, FCI Allenwood's mitigation efforts at controlling the spread of the coronavirus appear to be effective.  Currently, FCI Allenwood Low has no active inmate or staff positive tests.[4]  Over the course of the pandemic, one inmate has died as a result of infection by COVID-19, and 401 inmates have recovered from positive infections.[5]  Id.

Defendant appears to have at least received two doses of the Moderna vaccine.  (ECF 70 at 2).  Further, according to the BOP, 2,066 inmates at FCC Allenwood have been fully vaccinated.[6][7]

---

[4] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited April 22, 2022).

[5] Id.

[6] Id.

[7] The BOP lists the current inmate population at FCC Allenwood as 2,770.  FEDERAL BUREAU OF PRISONS, OUR LOCATIONS, https://www.bop.gov/locations/list.jsp (last visited April 22, 2022).  It is not clear whether the figure for total vaccinations at 2,066 is out of the 2,770 population or if it also represents inmates who have been released or transferred to other facilities. Regardless, it is clear that vaccinations are occurring at a very high rate.

Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court believes that the vaccination rate inside FCC Allenwood weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant does not present "extraordinary and compelling" reasons supporting his release. The fact that the pandemic and Defendant's deportation status have made incarceration more challenging than it otherwise would be, are not cognizable reasons warranting relief under § 3582(c)(1)(A). See United States v. Nawaz, 2021 WL 664128, at *2 (S.D.N.Y. Feb. 19, 2021) (the availability of home confinement to prisoners not facing deportation and the fact that prison conditions were harsh as a result of the pandemic do not represent "extraordinary and compelling reasons" justifying release).

3. **3553(a) Factors weigh against Defendant's Favor**

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction. Here, they do not.

Defendant argues that "the BOP has classified Huskic as minimum security which demonstrates he is not a danger to any person or the community upon his release." (ECF 68 at 3). Defendant does not argue that anything has changed in the

application of the § 3553(a) factors to his case, but rather that he "has experienced extreme hardship during these two years: limited recreation time and educational programming." (Id.)  This argument does not tilt a full balancing of the § 3553(a) factors in his favor.

The Government argues that the § 3553(a) factors weigh toward denying Defendant's motion.  They credit that Defendant had a traumatic childhood growing up in Bosnia, but that Defendant had multiple opportunities to live a law-abiding life in this country and he did not take them.  (ECF 70 at 14).  They highlight that Defendant also has a conviction for burglary in New York State and has shown a continued disregard for the law. (Id.)  In particular, at the time that Defendant committed the underlying offense in this case, he was on probation for the burglary.  (Id.)

The Court agrees with the Government and sees no reason to disturb the sentence it previously imposed.  Specifically, Defendant sold multiple kilos of drugs on several different occasions over the course of six months.  18 U.S.C. § 3553(a)(1).  The crime for which Defendant was incarcerated required coordination and planning and cannot be characterized as an impulsive action.  Id. at § 3553(a)(2)(A).  Further, the Court finds that deterrence of these kinds of crimes, both specific and general, is paramount where Defendant has sold

9

drugs on multiple occasions and where the sale of these kinds of drugs could be lucrative and presents a danger to the public. Id. at § 3553(a)(2)(B), § 3553(a)(2)(C).

And lastly, Defendant's argument that his time in prison has been harsher because of his immigration status is not a new one. That argument was presented and considered at sentencing in formulating a below-guidelines sentence.

In sum, the advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated or that there has been a material difference in the § 3553(a) factors that animated the original sentence.

**Conclusion**

For the reasons set forth above, Defendant's Motion for Compassionate Release (ECF 68) will be denied. An accompanying Order will issue.

Dated: April 26, 2022                    s/   Noel L. Hillman
At Camden, New Jersey                    NOEL L. HILLMAN, U.S.D.J.

10